UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TYSHAUN LAMAR GREGORY,

Plaintiff,

v.

INDIANA STATE PRISON, et al.,

Defendants.

CAUSE NO. 3:25-CV-129-JD-APR

OPINION AND ORDER

Tyshaun Lamar Gregory, a prisoner without a lawyer, filed an amended complaint seeking monetary damages. ECF 14. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Gregory alleges that he has been subjected to unconstitutional conditions of confinement while housed at Indiana State Prison ("ISP"). He also alleges that he became ill because of those conditions and received inadequate medical care.

There were birds present in the cell house where Gregory was residing. On December 11, 2024, Sgt. Troop brought Gregory his breakfast, including a cup of coffee, around 3:45 a.m. When Gregory finished his coffee, he found a white substance in the

bottom of his cup. He speculates that it may have been bird feces. Shortly after finishing his coffee, Gregory threw up. Gregory told Sgt. Troop that he was having a medical emergency and asked Sgt. Troop to take him to the medical unit to be examined and tested for diseases. Sgt. Troop did not feel Gregory's condition was urgent and instructed him to fill out a health care request form. Gregory responded by yelling that he was having a medical emergency until 6:30 a.m., when the shift changed. Sgt. Troop ignored him.

Under the Eighth Amendment,[1] inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

---

[1] In his amended complaint, Gregory indicates that, while incarcerated at ISP, he was being held pending trial and was also serving a conviction, but Gregory is serving a ten-year sentence that began on March 21, 2024. *See https://offenderlocator.idoc.in.gov* (last viewed April 13, 2026). Therefore, the court will analyze Gregory's claims pursuant to the Eighth Amendment.

Instructing Gregory to complete a health care request form to receive medical care when Gregory reported that he had vomited does not demonstrate deliberate indifference to any serious medical need. Therefore, Gregory will not be permitted to proceed against Sgt. Troop.

Around 8:30 a.m. on December 11, 2024, Nurse Hope was in the cell house delivering medications. Gregory asked her to stop by his cell because he was having a medical emergency. Nurse Hope also told Gregory to fill out a health care request form. Gregory explained that he believes he consumed bird feces, he had been sick all morning, he felt like he was dying, and he felt he needed medical help immediately. She still insisted that Gregory must fill out a health care request form.

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). When Gregory spoke with Nurse Hope, less than five hours had passed since he vomited. He claims he had been sick all morning and felt like he was going to die, but he does not indicate that he shared any details with Nurse Hope about the nature of his illness or any symptoms he may have had other than vomiting. Vomiting without any other symptoms does not generally require emergency medical

3

care. *See* https://www.mayoclinic.org/symptoms/nausea/basics/when-to-see-doctor/sym-20050736?p=1 (last visited Apr. 20, 2026). Based on the complaint before this court, it cannot be plausibly inferred that Nurse Hope failed to use her medical judgment when instructing Gregory to fill out a health care request form. Therefore, Gregory may not proceed against Nurse Hope.

Gregory completed a health care request form that afternoon. He gave it to Ofc. Lorek during lunch tray pass. Ofc. Lorek laughed at Gregory, said he was lying, and said that he would not turn the form in to the medical department. They argued and Ofc. Lorek allegedly said that Gregory could die and he would not care. The form was, however, turned in. Gregory did not receive a prompt response to his request and did not know that the form was turned in until about six months later, when he received a response indicating that he failed to show for an appointment.[2] Ofc. Lorek was rude and inconsiderate, but the factual allegations do not allow a plausible inference that he was deliberately indifferent to Gregory's medical needs where he turned in the form despite his threats to not do so. Therefore, Gregory may not proceed against Ofc. Lorek.

On December 14, 2025, around 12:24 a.m., Gregory woke to the sound of chirping in his cell. He found bird feces throughout his cell, including his bedding, clothes, and legal papers. Gregory told Ofc. Allen about the bird feces in his cell and the coffee he drank three days earlier that made him sick. Gregory wanted to be seen by a nurse. He also wanted clean clothes, clean bedding, and supplies to clean his cell. Ofc. Allen told

---

[2] Gregory, however, was never made aware of the appointment he missed.

4

Gregory to fill out a medical request form. He also told him that the night shift would address his requests for clean clothes and bedding. And he indicated that Gregory would need to wait to receive cleaning supplies on Monday, when cleaning chemicals are passed out. Instructing Gregory to fill out a health care request form does not show deliberate indifference to a serious medical need.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

5

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Requiring Gregory to wait until the night shift arrived to address his needs for clean clothing and bedding does not permit a plausible inference of deliberate indifference on the part of Ofc. Allen. Likewise, requiring Gregory to wait until the designated day to use cleaning chemicals to clean his cell does not show deliberate indifference to Gregory's conditions of confinement.

Gregory filled out a second medical request form on December 14, 2024. Gregory also completed a grievance. He made two copies of the grievance and gave the original to Joshua Wallen. He gave copies to Warden Neal and Alicia Wildfang. Gregory waited ten business days and then, on December 27, 2024, he filed a Request for Interview form with Warden Ron Neal, notifying the warden that Gregory did not receive a response to his grievance. Joshua Wallen responded indicating that they are working on it as soon as possible, but Gregory still did not receive either a receipt or a rejection form for the grievance. Three months later, Nina Hummel returned the grievance form unprocessed because it was a duplicate. Gregory, however, points out that he did not receive a response to any of the three copies of the grievance

On March 29, 2025, he wrote to Joshua Wallen to explain his concerns and ask that his grievance be processed. On May 14, 2025, Gregory requested an appeal form.

Gregory is suing Warden Neal, Joshua Wallen, Nina Hummel, and Alicia Wildfang for how his grievance and subsequent communications were handled. He alleges that his due process rights were violated and that they each turned a blind eye to his suffering. To the extent that Gregory faults Warden Neal, Joshua Wallen, Nina Hummel, and Alicia Wildfang for their roles in processing or responding to his grievances, he cannot proceed because he has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure).

To the extent he is suing these individuals because they failed to intervene when presented with his grievances complaining about inadequate responses to Gregory's various requests, he likewise cannot proceed. "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. at 596. Supervisors can also be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Gregory has not alleged facts from which it could be plausibly inferred that these individuals were deliberately indifferent to his conditions or that they facilitated, approved, condoned, or turned a blind eye to his needs for medical attention, clean clothing, clean

bedding, or cleaning supplies. Therefore, Gregory will not be permitted to proceed against Warden Neal, Joshua Wallen, Nina Hummel, or Alicia.[3]

On May 28, 2025, Gregory filed his fourth health care request form. He was seen by a nurse after submitting this form. Some testing was done. Gregory does not say what tests were done, but he says his results came back and he was told to gargle salt water for his cough and throat swelling. He explained that he had other symptoms and they'd been going on for six months. Gregory does not allege that he described these other symptoms to the provider. The health care provider said that his vitals were okay and there was nothing more she could do. The health care provider indicated that they did not get the first three forms, and she was sorry about that, but he could file a grievance. Gregory's first three health care request forms were answered on May 30, 2024, two days after he submitted his fourth health care request.

On June 5, 2025, Gregory turned in a fifth health care request form. He indicated he was experiencing stomach pains, abnormal vomiting, breathing problems, severe headaches, dizziness, and chest pains. He felt these symptoms were due to the bird droppings and mice excretions in D cell house. He indicated that he saw a nurse on May 28, 2025, but he did not get proper treatment, and he wanted to be seen again. Nobody responded to his health care request form. But Gregory does not link any

---

[3] While prolonged exposure to pigeon infestations can amount to an Eighth Amendment violation, Gregory references only two occasions where he was exposed to what he believed was feces. *See Davis v. Williams*, 216 F.Supp.3d 900, 907-08 (N.D.Ill. 2016).

particular defendant to the allegedly improper handling of his fifth health care request form.

On July 15, 2025, Gregory submitted a sixth health care request form. In response, he was seen by Nurse Deanna. He provides no details regarding the care that Nurse Deanna provided on July 15, 2025. Therefore, he cannot proceed against Nurse Deanna for deliberate indifference to a serious medical need.

Gregory is suing several additional nurses too: Nurse Maria, Nurse Bueford, Nurse Jennifer, Nurse Jeff, and Nurse Tonya. Gregory alleges that these nurses violated his Eighth Amendment rights, but he does not describe how they were involved in decisions regarding his health care. As already noted, "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596(7th Cir. 2009). Therefore, Gregory cannot proceed against these nurses.

 Gregory's amended complaint does not state a claim for which relief can be granted. Gregory has already had one opportunity to amend his complaint. Nonetheless, if Gregory believes he can state a claim *based on (and consistent with) the events described in this amended complaint*, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended"

9

on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Tyshaun Lamar Gregory until **May 15, 2026**, to file an amended complaint; and

(2) CAUTIONS Tyshaun Lamar Gregory that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on April 21, 2026

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT